# Exhibit A

RECORDING REQUESTED BY:
WORLD SAVINGS BANK

WHEN RECORDED MAIL TO:
WORLD SAVINGS BANK
FINAL DOCUMENTATION
CLOSING DEPARTMENT
P.O. BOX 659548
SAN ANTONIO, TX 78265-9548

LOAN NUMBER: 0045240561

NOTE AMOUNT: $618,750.00

San Francisco Assessor-Recorder
Phil Ting, Assessor-Recorder
DOC- 2007-I339958-00
Acct 3-FIRST AMERICAN Title Company
Wednesday, FEB 21, 2007 08:00:00
Ttl Pd $63.00        Nbr-0003178523
REEL J332 IMAGE 0089
okc/KC/1-19

3014202c
3807-243833l
APN: 0523/053

FOR RECORDER'S USE ONLY

# DEED OF TRUST

THIS IS A FIRST DEED OF TRUST WHICH SECURES A NOTE WHICH CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE, FREQUENCY AND AMOUNT OF PAYMENTS AND PRINCIPAL BALANCE (INCLUDING FUTURE ADVANCES AND DEFERRED INTEREST). AT LENDER'S OPTION THE SECURED NOTE MAY BE RENEWED OR RENEGOTIATED. THE SECURED NOTE PROVIDES FOR MONTHLY PAYMENTS OF PRINCIPAL AND INTEREST.

THE MAXIMUM AGGREGATE PRINCIPAL BALANCE SECURED BY THIS DEED OF TRUST IS $773,437.50 WHICH IS 125% OF THE ORIGINAL PRINCIPAL NOTE AMOUNT.

---

I. DEFINITIONS OF WORDS USED IN THIS DEED OF TRUST

(A) **Security Instrument.** This Deed of Trust, which is dated **February 13, 2007**, will be called the "Security Instrument."

(B) **Borrower.** KEYHAN MOHANNA, TRUSTEE OF THE KEYHAN MOHANNA REVOCABLE TRUST DATED JULY 8, 2003 sometimes will be called "Borrower" and sometimes simply "I" or "me."

(C) **Lender.** WORLD SAVINGS BANK, FSB, ITS SUCCESSORS AND/OR ASSIGNEES, will be called "Lender." Lender is a FEDERAL SAVINGS BANK, which is organized and exists under the laws of the United States. Lender's address is 1901 Harrison Street, Oakland, CA 94612.

(D) **Note.** The note signed by Borrower and having the same date as this Security Instrument, including all extensions, renewals, substitutions and modifications thereof, will be called the "Note." The Note shows that I owe Lender the original principal amount of U.S. **$618,750.00**, plus accrued and deferred interest and such other amounts as stated in the Note. I have promised to pay this debt in regularly scheduled periodic payments as provided in the Note and to pay the debt in full by **March 15, 2037** ("Maturity Date").

(E) **Property.** The property that is described below in Section III entitled "Description of the Property" will be called the "Property."

(F) **Sums Secured.** The amounts described below in Section II entitled "Borrower's Transfer of Rights in the Property" sometimes will be called the "Sums Secured."

(G) **Person.** Any person, organization, governmental authority or other party will be called "Person."

(H) **Trustor, Beneficiary, Trustee.** Borrower is the "Trustor," Lender is the "Beneficiary" and **Golden West Savings Association Service Co., A California Corporation** is the "Trustee."

## II. BORROWER'S TRANSFER OF RIGHTS IN THE PROPERTY

I irrevocably grant and convey the Property to the Trustee, in trust for Lender, with a power of sale subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender and Trustee those rights that are stated in this Security Instrument and also those rights that the law gives to lenders who are beneficiaries of a deed of trust and to trustees of a deed of trust. I am giving Lender and Trustee these rights to protect Lender from possible losses that might result if I fail to:

(i) pay all amounts owed to Lender under the Note and all other notes secured by this Security Instrument, called the "Secured Notes," including future advances made by Lender and any changes to the Secured Notes made with the written consent of Lender;

(ii) pay, with interest, any amounts that Lender spends under Paragraphs 2 and 7 below to protect the value of the Property and Lender's rights in the Property; and

(iii) keep all of my other promises and agreements under this Security Instrument, the Secured Notes and any changes to the Secured Notes made with the written consent of Lender.

## III. DESCRIPTION OF THE PROPERTY

I give Trustee rights in the Property described below:

(i) The Property which is located at **1405 GREENWICH ST # 4, SAN FRANCISCO, CA 94109-0221**. The legal description of the Property is attached as Exhibit "A" which is made a part of this Security Instrument. This Property is called the "Described Property."

(ii) All buildings and other improvements that are located on the Described Property;

SD001B (2004-03-3)
DEFERRED INTEREST
Page 2
CA

Non-Order Search Case: 18-30983 Doc# 19-3 Filed: 09/18/18 Entered: 09/18/18 14:09:24 Page 3 of 20
Doc: 2007-339958 TDD 02-21-2007 Page 2 of 19 Requested By: Dino Araujo, Printed: 12/20/2017 11:58 AM

(iii) All rights in other property that I have as owner of the Described Property. These rights are known as easements, rights and appurtenances attached to the Property;

(iv) All rents or royalties and other income from the Described Property;

(v) All mineral, oil and gas rights and profits, water rights and stock that are part of the Described Property;

(vi) All rights that I have in the land which lies in the streets or roads in front of, behind or next to, the Described Property;

(vii) All fixtures that are now or in the future will be on the Described Property or on the property described in subsection (ii) of this Section;

(viii) All of the rights and property described in subsections (ii) through (vii) of this Section that I acquire in the future;

(ix) All replacements of or additions to the property described in subsections (ii) through (viii) of this Section; and

(x) All of the amounts that I pay to Lender under Paragraph 2 below.

## IV. BORROWER'S RIGHT TO GRANT A SECURITY INTEREST IN THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (i) I lawfully own the Property; (ii) I have the right to grant and convey the Property to Trustee; and (iii) there are no outstanding claims, charges, liens or encumbrances against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself and the Trustee has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

## COVENANTS

I promise and I agree with Lender as follows:

### 1. BORROWER'S PROMISE TO PAY

I will pay to Lender, on time, all principal and interest due under the Secured Notes and any prepayment and late charges due under the Secured Notes.

### 2. PAYMENTS FOR TAXES AND INSURANCE

(A) **Borrower's Obligations**

I will pay all amounts necessary to pay taxes and hazard insurance premiums on the Property as well as assessments, leasehold payments, ground rents or mortgage insurance premiums (if any).

SD001C (2004-03-3)  CA

Page 3

Non-Order Search  Page 3 of 19  Requested By: Dino Araujo, Printed: 12/20/2017 11:58 AM
Doc: 2007-339958 TDD 02-21-2007

Case: 18-30983  Doc# 19-3  Filed: 09/18/18  Entered: 09/18/18 14:09:24  Page 4 of 20

0045240561

0045240561

**(B)   Escrow Accounts**

Subject to applicable law, no escrow shall be required except upon written demand by Lender, in which case, I shall pay to Lender on the day payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes, penalties and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; and (e) yearly mortgage insurance premiums, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for an escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and/or applicable law permits Lender to make such a charge. However, Lender may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay me any interest or earnings on the Funds. Lender shall give to me, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to me for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify me in writing, and, in such case I shall pay to Lender the amount necessary to make up the deficiency or shortage. I shall make up the deficiency or shortage in accordance with the requirements of the Lender, at its sole discretion, in the manner and times prescribed by RESPA.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to me any Funds held by Lender. If, under Paragraph 28, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

SD001D (2004-03-3)

Page 4

CA

Case: 18-30983    Doc# 19-3    Filed: 09/18/18    Entered: 09/18/18 14:09:24    Page 5 of 20

Page 4 of 19

Non-Order Search    Requested By: Dino Araujo, Printed: 12/20/2017 11:58 AM
Doc: 2007-339958 TDD 02-21-2007

3. **APPLICATION OF BORROWER'S PAYMENTS**
Unless applicable law requires otherwise, Lender will apply each of my payments under the Secured Notes and under Paragraphs 1 and 2 above in the following order and for the following purposes:

   First, to pay prepayment charges due under the Secured Notes;

   Second, to pay any advances due to Lender under this Security Instrument;

   Third, to pay the amounts due to Lender under Paragraph 2 above;

   Fourth, to pay interest due under the Secured Notes;

   Fifth, to pay deferred interest due under the Secured Notes;

   Sixth, to pay principal due under the Secured Notes;

   Last, to pay late charges due under the Secured Notes.

4. **BORROWER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS**
I will pay all taxes, assessments and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument.

I will also make payments due under my lease if I am a tenant on the Property and I will pay ground rents (if any) due on the Property. I will pay these amounts either by making the payments to Lender that are described in Paragraph 2 above or by making the payments on time to the Person owed them.

Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a **lien**. I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior lien if: (A) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves in writing the way in which I agree to pay that obligation; or (B) in good faith, I argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced and no part of the Property must be given up; or (C) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that Person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give to me a notice identifying the superior lien. I will pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5. **BORROWER'S OBLIGATION TO MAINTAIN INSURANCE**
At my sole cost and expense, I will obtain and maintain hazard insurance to cover all buildings and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies and other hazards for which Lender requires coverage. The insurance must be in the amounts and for the periods of time required by Lender. I may choose the insurance company but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable. All of these insurance policies and renewals of the policies must include what is known as a **Standard Mortgagee Clause** to protect Lender. The form of all policies and renewals must be acceptable to Lender. Lender will have the right to hold the policies and renewals. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

Non-Order Search Case: 18-30983    Doc# 19-3    Filed: 09/18/18    Entered: 09/18/18 14:09:24    Page 6 of
Doc: 2007-339958 TDD 02-21-2007                Page 5 of 19              Requested By: Dino Araujo, Printed: 12/20/2017 11:58 AM
                                                                       20

If I obtain earthquake insurance, any other hazard insurance, credit life and/or disability insurance, or any other insurance on or relating to the Property or the Secured Notes and which are not specifically required by Lender, I will name Lender as loss payee of any proceeds.

If there is a loss or damage to the Property, I will promptly notify the proper insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company is called "Proceeds." Any Proceeds received will be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining the Proceeds, and then, at Lender's option and in the order and proportion as Lender may determine in its sole and absolute discretion, regardless of any impairment or lack of impairment of security, as follows: (A) to the extent allowed by applicable law, to the Sums Secured in a manner that Lender determines and/or (B) to the payment of costs and expenses of necessary repairs or to the restoration of the Property to a condition satisfactory to Lender, such application to be made in the manner and at the times as determined by Lender.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender or the insurance company stating that the insurance company has offered to settle a claim, Lender may collect the Proceeds. I will notify Lender immediately of any offer to settle a claim I receive from the insurance company. I will immediately deliver any Proceeds I receive from any insurer or other persons to Lender. Lender may use the Proceeds to repair or restore the Property or to pay the Sums Secured. The 30-day period will begin when the notice is given.

If any Proceeds are used to reduce the amount of the outstanding balance of the Sums Secured, that use will not delay the due date or change the amount of any of my regularly scheduled payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

If Lender acquires the Property under Paragraph 28 below, all of my rights in the insurance policies will belong to Lender. Also, all of my rights in any Proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender. However, Lender's rights in those Proceeds will not be greater than the total amount of the Sums Secured immediately before the Property is acquired by Lender or sold.

If I am required by Lender to pay premiums for mortgage insurance, I will pay the premiums until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law.

## 6. BORROWER'S OBLIGATION TO MAINTAIN THE PROPERTY AND TO FULFILL ANY LEASE OBLIGATIONS

I will keep the Property in good repair including, but not limited to, keeping the Property free from debris, mold, termites, dry rot and other damaging pests and infestations. I will not destroy or substantially change the Property and I will not allow the Property to deteriorate. I will keep and maintain the Property in compliance with any state or federal health and safety laws, and hazardous materials and hazardous waste laws. I will not use, generate, manufacture or store any hazardous materials or hazardous waste on, under or about the Property. I will indemnify, defend and hold harmless Lender and its employees, officers and directors and their successors from any claims, damages or costs for required or necessary repair or the removal of mold, termites, dry rot, other damaging pests and infestations and hazardous waste or any other hazardous materials claim. If I do not own but am a tenant on the Property, I will fulfill my obligations under my lease. I also agree that, if I acquire the fee title to the Property, my lease interest and the fee title will not merge unless Lender agrees to the merger in writing.

Non-Order Search Case: 18-30983  Doc# 19-3  Filed: 09/18/18  Entered: 09/18/18 14:09:24  Page 7 of
Doc: 2007-339958 TDD 02-21-2007                     Page 6 of 19              Requested By: Dino Araujo , Printed: 12/20/2017 11:58 AM
                                                          20

## 7. LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY

If: (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (including but not limited to any manner of legal proceeding in bankruptcy, in probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever it deems reasonable or appropriate to protect the Lender's rights in the Property. Lender's actions may include, without limitation, appearing in court, paying reasonable attorneys' fees, purchasing insurance required under Paragraph 5, above (such insurance may cost more and provide less coverage than the insurance I might purchase), and entering on the Property to make repairs. Lender must give me notice before Lender may take any of these actions. Although Lender may take action under this Paragraph 7, Lender does not have to do so. Any action taken by Lender under this Paragraph 7, will not release me from my obligations under this Security Instrument.

I will pay to Lender any amounts which Lender advances under this Paragraph 7 with interest, at the interest rate in effect under the Secured Notes. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. Interest on each amount will begin to accrue on the date that the amount is advanced by Lender. However, Lender and I may agree in writing to terms that are different from those in this Paragraph 7. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

## 8. LENDER'S RIGHT TO INSPECT THE PROPERTY

Lender, and others authorized by Lender, may enter upon and inspect the Property. They must do so in a reasonable manner and at reasonable times. Before or at the time an inspection is made, Lender must give me notice stating a reasonable purpose for the inspection.

## 9. AGREEMENTS ABOUT GOVERNMENTAL TAKING OF THE PROPERTY

I assign to Lender all my rights: (A) to proceeds of all awards or claims for damages resulting from condemnation, eminent domain or other governmental taking of all or any part of the Property; and (B) to proceeds from a sale of all or any part of the Property that is made to avoid condemnation, eminent domain or other governmental taking of the Property. All of those proceeds will be paid to Lender. If I receive any such proceeds, I will immediately deliver them to Lender.

If all of the Property is taken, the proceeds will be used to reduce the Sums Secured. If any of the proceeds remain after the Sums Secured have been paid in full, the remaining proceeds will be paid to me. Unless Lender and I agree otherwise in writing, if only a part of the Property is taken, Sums Secured will be reduced only by the amount of proceeds multiplied by the following fraction: (A) the total amount of the Sums Secured immediately before the taking, divided by (B) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds and settle the claim. Lender may then use the proceeds to reduce the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of the outstanding principal of the Secured Notes, that use will not delay the due date or change the amount of any of my regularly scheduled payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

SD001G (2004-03-3)    CA

Page 7

Non-Order Search    Case: 18-30983    Doc# 19-3    Filed: 09/18/18    Entered: 09/18/18 14:09:24    Page 8 of 20
Doc: 2007-339958 TDD 02-21-2007    Page 7 of 19    Requested By: Dino Araujo , Printed: 12/20/2017 11:58 AM

## 10. CONTINUATION OF BORROWER'S OBLIGATIONS AND OF LENDER'S RIGHTS

### (A) Borrower's Obligations

Lender may allow a Person who takes over my rights and obligations subject to this Security Instrument to delay or to change the amount of the payments of principal and interest due under the Secured Notes or under this Security Instrument. Even if Lender does this, however, that Person and I will both still be fully obligated under the Secured Notes and under this Security Instrument.

Lender may allow those delays or changes for a Person who takes over my rights and obligations, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against such a Person for not fulfilling obligations under the Secured Notes or under this Security Instrument, even if Lender is requested to do so.

### (B) Lender's Rights

Even if Lender does not exercise or enforce any of its rights under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right under Paragraph 28 below to demand that I make immediate payment in full of the Sums Secured.

## 11. OBLIGATIONS OF BORROWER, CO-SIGNORS AND OF PERSONS TAKING OVER BORROWER'S RIGHTS OR OBLIGATIONS

Except as provided below, if more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured.

Any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signor"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signor's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signor's consent.

Any Person who takes over my rights or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Similarly, any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument.

## 12. MAXIMUM LOAN CHARGES

If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits, then: (A) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limits and (B) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the outstanding principal balance of the Secured Notes or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Secured Notes.

### 13. LEGISLATION AFFECTING LENDER'S RIGHTS

If a change in applicable law would make any provision of the Secured Notes or this Security Instrument unenforceable, Lender may require that I make immediate payment in full of all Sums Secured by this Security Instrument.

### 14. NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT

Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice will be addressed to me at **1405 GREENWICH ST UNIT 1, SAN FRANCISCO, CA 94109-0221**. A notice will be given to me at an alternative address if I give Lender notice of my alternative address. I may give notice to Lender of my alternative address in writing or by calling Lender's customer service telephone number provided on my billing statement. I may designate only one mailing address at a time for notification purposes. Except as permitted above for changes of address, any notice that must be given to Lender under this Security Instrument will be given by mailing it by first class mail to Lender's address stated in Section I.(C) above entitled, "Definitions of Words Used In This Deed of Trust," unless Lender gives me notice of a different address. Any notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Paragraph 14 or of applicable law.

### 15. GOVERNING LAW; SEVERABILITY

**This Security Instrument and the Secured Notes shall be governed by and construed under federal law and federal rules and regulations, including those for federally chartered savings institutions ("Federal Law") and, to the extent Federal Law does not apply, by the law of the jurisdiction in which the Property is located.** In the event that any of the terms or provisions of this Security Instrument or the Secured Notes are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted and shall not affect the remaining provisions of this Security Instrument or the Secured Notes.

### 16. BORROWER'S COPY

I acknowledge the receipt of one conformed copy of the Secured Notes and of this Security Instrument.

### 17. LENDER'S RIGHTS TO RENTAL PAYMENTS AND TO TAKE POSSESSION OF THE PROPERTY

If Lender requires immediate payment in full or if I abandon the Property, then Lender, Persons authorized by Lender, or a receiver appointed by a court at Lender's request may: (A) collect the rental payments, including overdue rental payments, directly from the tenants; (B) enter upon and take possession of the Property; (C) manage the Property; and (D) sign, cancel and change rental agreements and leases. If Lender notifies the tenants that Lender has the right to collect rental payments directly from them under this Paragraph 17, I agree that the tenants may make those rental payments to Lender without having to ask (i) Lender whether I have failed to keep my promises and agreements under this Security Instrument, or (ii) me for my permission to do so.

If Lender acts to have the Property sold after a Breach of Duty as defined in Paragraph 28, I understand and agree that: (A) my right to occupy the Property ceases at the time the Property is sold; (B) I shall have no right to occupy the Property after such sale without the written consent of the new owner of the Property; and (C) my wrongful and unlawful possession of the Property may subject me to monetary damages, including the loss of reasonable rent and the cost of eviction. All rental payments collected by

Non-Order Search  Case: 18-30983    Doc# 19-3    Filed: 09/18/18    Entered: 09/18/18 14:09:24    Page 10 of 20
Page 9 of 19   Requested By: Dino Araujo , Printed: 12/20/2017 11:58 AM
Doc: 2007-339958 TDD 02-21-2007

Lender or by a receiver, other than the rent paid by me under this Paragraph 17, will be used first to pay the costs of collecting rental payments and of managing the Property. If any part of the rental payments remains after those costs have been paid in full, the remaining part will be used to reduce the Sums Secured. The costs of managing the Property may include the receiver's fees, reasonable attorneys' fees and the costs of any necessary bonds.

### 18. INJURY TO PROPERTY; ASSIGNMENT OF RIGHTS

An assignment is a transfer of rights to another. I may have rights to bring legal action against persons, other than Lender, for injury or damage to the Property or in connection with the loan made to me by Lender and which arose or will arise before or after the date of this Security Instrument. These rights to bring legal action may include but are not limited to an action for breach of contract, fraud, concealment of a material fact, or for intentional or negligent acts. I assign these rights, and any and all proceeds arising from these rights, as permitted by applicable law, to Lender. Lender may, at its option, enforce these rights in its own name and may apply any proceeds resulting from this assignment to the Sum Secured and this Security Instrument after deducting any expenses, including attorneys' fees, incurred in enforcing these rights. At the request of Lender, I will sign any further assignments or other documents that may be necessary to enforce this assignment. I will notify Lender immediately if I believe I have the right to bring any such legal action against any persons, and will notify Lender immediately if I assert any claim or demand against or commence any legal action against any such person. If I receive any proceeds from any persons besides Lender in connection with any such claim, demand or legal action, I will immediately deliver such proceeds to Lender.

### 19. CLERICAL ERRORS

In the event Lender at any time discovers that this Security Instrument, the Secured Notes or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from Lender, to execute such documentation as Lender deems necessary to correct any such error(s) and I also agree that I will not hold Lender responsible for any damage to me which may result from any such error.

### 20. LOST, STOLEN OR MUTILATED DOCUMENTS

If any of the Loan Documents are lost, stolen, mutilated or destroyed and Lender delivers to me an indemnification in my favor, signed by Lender, then I will sign and deliver to Lender a Loan Document identical in form and content which will have the effect of the original for all purposes.

### 21. WAIVER OF STATUTE OF LIMITATIONS

I will waive, within applicable law, the pleading of the statute of limitations as a defense to enforce this Security Instrument, including any obligations referred to in this Security Instrument or Secured Notes.

### 22. CAPTIONS

The captions and headings at the beginning of each paragraph of this Security Instrument are for reference only and will not be used in the interpretation of any provision of this Security Instrument.

### 23. MODIFICATION

This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender.

### 24. CONDOMINIUM, COOPERATIVE AND PLANNED UNIT DEVELOPMENT OBLIGATIONS

If the Property is a unit in a condominium, cooperative or planned unit development, each of which shall be called the "Project," and I have an interest in the common elements of the Project, then Lender and I agree that:

(A) If an owners association or other entity, called "Owners Association," holds title to Property for the benefit or use of the Project and its members or shareholders, the Property also includes my interest in the Owners Association and the uses, proceeds and benefits of my interest.

SD001J (2004-03-3)

CA

Non-Order Search Case: 18-30983    Doc# 19-3    Filed: 09/18/18    Entered: 09/18/18 14:09:24    Page 11 Page 10 of 19 of 20 Requested By: Dirio Araujo , Printed: 12/20/2017 11:58 AM
Doc: 2007-339958 TDD 02-21-2007

(B) The following are called the "Constituent Documents:" (i) The declaration or any other document which created the Project; (ii) By-laws of the Owners Association; (iii) Code of regulations for the Project; (iv) Articles of incorporation, trust instrument or equivalent document which creates the Owners Association; (v) The Project's covenants, conditions and restrictions; (vi) Other equivalent documents.

I shall perform all of my obligations under the Constituent Documents, including my obligation to pay, when due, all dues and assessments. If I do not pay the dues and assessments when due, Lender may, at its option, pay them. I will pay to Lender any amounts which Lender advances under this Paragraph 24 according to the terms described in Paragraph 7 above.

(C) If the Owners Association maintains, with an insurance company reasonably acceptable to Lender, a **master** or **blanket** policy on the Project which is satisfactory to Lender and which provides insurance coverage on the terms, in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage," and Lender is provided with evidence of such **master** or **blanket** policy, then: (i) Lender waives the provision in Paragraph 2(B) above for the payment to Lender of the estimated yearly premium installments for hazard insurance on the Property; and (ii) hazard insurance coverage on the Property as required by Paragraph 5 above is deemed to be satisfied to the extent that the required coverage is provided by the Owners Association policy. I shall give Lender prompt notice of any lapse in the required hazard insurance coverage. I shall provide a copy of such **master** or **blanket** policy to Lender annually.

In the event of a distribution of any hazard insurance proceeds, including without limitation any earthquake or special hazards insurance whether or not such coverage was required by Lender, in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to me are hereby assigned and shall be paid to Lender for application to the Sums Secured by this Security Instrument, with any excess paid to me. If I receive any such proceeds, I will immediately deliver them to Lender or otherwise apply them as set forth above.

I shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable to Lender in form, amount and extent of coverage.

(D) I shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of condemnation, eminent domain or other governmental taking; (ii) any amendment to any provision of Constituent Documents unless the provision is for the express benefit of Lender or of lenders generally; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the **master** or **blanket** hazard insurance policy and/or the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

## 25. FUTURE ADVANCES

At Borrower's request, Lender, at its option (but before release of this Security Instrument or the full reconveyance of the Property described in the Security Instrument) may lend future advances, with interest, to Borrower. Such future advances, with interest, will then be additional Sums Secured under this Security Instrument.

Non-Order Search    Case: 18-30983    Doc# 19-3    Filed: 09/18/18    Entered: 09/18/18 14:09:24    Page 12
Doc: 2007-339958 TDD 02-21-2007                     Page 11 of 19           Requested By: Dino Araujo, Printed: 12/20/2017 11:58 AM
                                                          of 20

## 26. AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED

**Acceleration of Payment of Sums Secured.** Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission. However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument.

If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration. If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me.

**Exception to Acceleration of Payment of Sums Secured.** If the sale or transfer of all or any part of the Property, or of a beneficial interest in Borrower, if Borrower is not a natural Person, is the first one to occur after the date of this Security Instrument, Lender will not exercise the option to accelerate payment in full of all Sums Secured and the loan may be assumed if:

(i) Lender receives a completed written application from transferee to evaluate the creditworthiness of transferee as if a new loan were being made to the transferee by Lender;

(ii) Lender approves the creditworthiness of the transferee in writing;

(iii) transferee makes a cash downpayment sufficient to meet Lender's then current underwriting standards;

(iv) an assumption fee, in an amount to be determined by Lender (but not to exceed 1% of the then outstanding balance of Principal and interest under the Secured Notes at the time of sale or transfer of the Property or of the interest in the Borrower) is paid to Lender; and

(v) the transferee executes an assumption agreement which is satisfactory to Lender. Such assumption agreement may provide, if required by Lender, that the transferee open a deposit account with Lender or with a bank or other depository institution approved by Lender, to facilitate direct payments if direct payments are required in the Note.

The loan may be assumed under its then existing terms and conditions with one exception; the Lifetime Rate Cap may be changed. The Lifetime Rate Cap shall be changed to an interest rate which is the sum of the interest rate in effect on the date of a sale or transfer of the Property or beneficial interest in Borrower plus 5 percentage points, if that sum exceeds the Lifetime Rate Cap stated in the Secured Notes.

## 27. SUBSTITUTION OF TRUSTEE

I agree that Lender may at any time appoint a successor trustee and that Person shall become the Trustee under this Security Instrument as if originally named as Trustee.

Non-Order Search　Case: 18-30983　Doc# 19-3　Filed: 09/18/18　Entered: 09/18/18 14:09:24　Page 13
Doc: 2007-339958 TDD 02-21-2007　　Page 12 of 19　　of 20　　Requested By: Dino Araujo , Printed: 12/20/2017 11:58 AM

### 28. RIGHTS OF THE LENDER IF THERE IS A BREACH OF DUTY

It will be called a "Breach of Duty" if (i) I do not pay the full amount of each regularly scheduled payment on the date it is due; or (ii) I fail to perform any of my promises or agreements under the Note or this Security Instrument; or (iii) any statement made in my application for this loan was materially false or misleading or if any statement in my application for this loan was materially false or misleading by reason of my omission of certain facts; or (iv) I have made any other statement to Lender in connection with this loan that is materially false or misleading. If there is a Breach of Duty by me, Lender may demand an immediate payment of all sums secured.

If there is a Breach of Duty by me, Lender may exercise the power of sale, take action to have the Property sold under applicable law, and invoke such other remedies as may be permitted under any applicable law.

Lender does not have to give me notice of a Breach of Duty. If Lender does not make a demand for full payment of the Sums Secured upon a Breach of Duty, Lender may make a demand for full payment of the Sums Secured upon any other Breach of Duty.

If there is a Breach of Duty, Lender may also take action to have a receiver appointed to collect rents from any tenants on the Property and to manage the Property. The action to appoint a receiver may be taken without prior notice to me and regardless of the value of the Property.

The sale of the Property may be postponed by or at the direction of Lender. If the Property is sold, I agree that it may be sold in one parcel. I also agree that Lender may add to the amount that I owe to Lender all legal fees, costs, allowances, and disbursements incurred as a result of the action to sell the Property.

Lender will apply the proceeds from the sale of the Property in the following order: (A) to all fees, expenses and costs incurred in connection with the sale, including but not limited to trustees' and attorneys' fees, if any; (B) to all Sums Secured by this Security Instrument; and (C) any excess to the Person or Persons legally entitled to it.

### 29. RECONVEYANCE

Upon payment of all Sums Secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all Secured Notes to Trustee. Trustee shall reconvey the Property without warranty to Borrower. Lender may charge Borrower a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (including the Trustee) for services rendered and the charging of the fee is permitted, whether expressly or by lack of express prohibition, under applicable law. If the fee charged does not exceed any maximum fee set by applicable law, the fee is conclusively presumed to be reasonable.

### 30. STATEMENT OF OBLIGATION

Lender may collect a fee of $60.00, or such greater maximum amount as may from time to time be allowed by law, for furnishing any statement of obligation with respect to this Security Instrument or the Secured Notes.

Non-Order Search　Case: 18-30983　Doc# 19-3　Filed: 09/18/18　Entered: 09/18/18 14:09:24　Page 14 of 20
Doc: 2007-339958 TDD 02-21-2007　Page 15 of 19　Requested By: Dino Araujo, Printed: 12/20/2017 11:58 AM

0045240561

### 31. ( X ) QUICK QUALIFYING LOAN PROGRAM

I have qualified for this loan by making statements of fact which were relied upon by Lender to approve the loan rapidly. This loan is called a "Quick Qualifying Loan." I have stated and I confirm that: (A) I do not have any other Quick Qualifying Loans with Lender; (B) I have agreed to not further encumber the Property and do not intend to further encumber the Property for at least six months after the date of the Secured Notes and this Security Instrument; and (C) If I am purchasing the Property, all of the terms of the purchase agreement submitted to Lender are true and the entire down payment is cash from my own funds.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin subject to the Lifetime Rate Cap stated in the Secured Notes.

### 32. ( ) OWNER OCCUPANCY

Lender has relied upon statements of fact which I have made to qualify for this loan. I have stated and confirm that: (A) the Property is my personal and primary residence; (B) I will occupy the Property not later than 30 days after this Security Instrument is recorded; and (C) I will use the Property as my residence for at least 12 months from the date this Security Instrument is recorded.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin, subject to the Lifetime Rate Cap stated in the Secured Notes.

( X ) VALUE INDICATES THAT THE PARAGRAPH APPLIES.

**THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS.**

SD001N (2004-03-3)

CA

Page 14

Non-Order Search    Case: 18-30983    Doc# 19-3    Filed: 09/18/18    Entered: 09/18/18 14:09:24    Page 15
Page 14 of 19    Requested By: Dino Araujo , Printed: 12/20/2017 11:58 AM
Doc: 2007-339958 TDD 02-21-2007    of 20

0045240561

**BY SIGNING BELOW,** I accept and agree to the promises and agreements contained in this Security Instrument and in any rider(s) signed by me and recorded in proper official records.

**(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)**

**BORROWER(S):**

THE KEYHAN MOHANNA REVOCABLE TRUST

BY: _Keyhan Mohanna, Trustee_ (Seal)

KEYHAN MOHANNA, TRUSTEE

**ATTACH TRUST NOTARY ACKNOWLEDGEMENT**

SD001 (2004-03-1)   [AF1 (2004-03-1)]   Page 15   CA
                    [B01 (2004-03-1)]

Non-Order Search  Case: 18-30983   Doc# 19-3   Filed: 09/18/18   Entered: 09/18/18 14:09:24   Page 16
Doc: 2007-339958 TDD 02-21-2007              Page 15 of 19      of 20     Requested By: Dino Araujo , Printed: 12/20/2017 11:58 AM

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGEMENT

File No.: 2438331
APN No: 053, 0523

STATE OF California )SS
COUNTY OF San Francisco )

On **February 15, 2007** before me, **A. McGann**, Notary Public, personally appeared **Keyhan Mohanna** personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature [signature]

[Notary Seal: A. MCGANN, Comm. #1524916, NOTARY PUBLIC - CALIFORNIA, City and County of San Francisco, My Comm. Expires Nov. 7, 2008]

This area for official notarial seal.

## OPTIONAL SECTION
### CAPACITY CLAIMED BY SIGNER

Though statute does not require the Notary to fill in the data below, doing so may prove invaluable to persons relying on the documents.

- [x] INDIVIDUAL
- [ ] CORPORATE OFFICER(S)   TITLE(S)
- [ ] PARTNER(S)   [ ] LIMITED   [ ] GENERAL
- [ ] ATTORNEY-IN-FACT
- [ ] TRUSTEE(S)
- [ ] GUARDIAN/CONSERVATOR
- [ ] OTHER

SIGNER IS REPRESENTING:

**Name of Person or Entity** _____   **Name of Person or Entity** _____

### OPTIONAL SECTION

Though the data requested here is not required by law, it could prevent fraudulent reattachment of this form.

**THIS CERTIFICATE MUST BE ATTACHED TO THE DOCUMENT DESCRIBED BELOW**

TITLE OR TYPE OF DOCUMENT: _____

NUMBER OF PAGES _____   DATE OF DOCUMENT _____

SIGNER(S) OTHER THAN NAMED ABOVE _____

Reproduced by First American Title Insurance 1/2001

Non-Order Search   Page 16 of 19   Requested By: Dino Araujo, Printed: 12/20/2017 11:58 AM
Doc: 2007-339958 TDD 02-21-2007

**WORLD SAVINGS BANK, FSB**

# EXHIBIT "A"
# LEGAL DESCRIPTION

LOAN NO. 0045240561

ALL THAT CERTAIN REAL PROPERTY SITUATED IN THE COUNTY OF SAN FRANCISCO STATE OF CALIFORNIA, DESCRIBED AS FOLLOWS:

**TAPE ONLY THE LEGAL DESCRIPTION TO THIS PAGE.**

SD001 (2003-03-2) [GF430A1]    Page 15 of 16    CA

Non-Order Search
Doc: 2007-339958 TDD 02-21-2007
Requested By: Dino Araujo, Printed: 12/20/2017 11:58 AM
Case: 18-30983   Doc# 19-3   Filed: 09/18/18   Entered: 09/18/18 14:09:24   Page 18 of 20
Page 17 of 19

Order No.: 3014202c
Reference No.: MOHANNA
Escrow Officer:
Escrow Number: 2438331

Exhibit "A"

## DESCRIPTION

All that certain land situated in the State of California, County of **SAN FRANCISCO**, City of **SAN FRANCISCO**, described as follows:

PARCEL I:

CONDOMINIUM UNIT NO. 4, LOT 53, INCLUSIVE, AS SHOWN UPON THE CONDOMINIUM MAP AND DIAGRAMMATIC FLOOR PLAN ENTITLED "MAP OF 1405 GREENWICH STREET" WHICH WAS FILED FOR RECORD ON DECEMBER 10, 1999 IN PARCEL MAP BOOK 44, AT PAGES 60 TO 65, INCLUSIVE, AND THE "AMENDMENT TO CONDOMINIUM PLAN" RECORDED MAY 5, 2000 AS DOCUMENT NO. 2000-G769926-00, IN THE OFFICE OF THE RECORDER OF THE CITY AND COUNTY OF SAN FRANCISCO, STATE OF CALIFORNIA (REFERRED TO HEREIN AS "THE MAP"), AND AS FURTHER DEFINED IN THE DECLARATION OF COVENANTS, CONDITIONS AND RESTRICTIONS OF 1405 GREENWICH STREET HOMEOWNERS ASSOCIATION RECORDED ON MAY 5, 2000 AS DOCUMENT NO. 2000-G769926-00, OFFICIAL RECORDS OF THE CITY AND COUNTY OF SAN FRANCISCO, STATE OF CALIFORNIA (REFERRED TO HEREIN AS "THE DECLARATION").

EXCEPTING THEREFROM, ANY PORTION OF THE COMMON AREA LYING WITHIN SAID UNIT.

RESERVING THEREFROM:

(A) EASEMENTS THROUGH SAID UNIT, APPURTENANT TO THE COMMON AREA AND ALL OTHER UNITS, FOR SUPPORT AND REPAIR OF THE COMMON AREA ALL OTHER UNITS.

(B) EASEMENTS, APPURTENANT TO THE COMMON AREA FOR ENCROACHMENT UPON THE AIR SPACE OF THE UNIT BY THOSE PORTIONS OF THE COMMON AREA LOCATED WITHIN THE UNIT.

PARCEL II:

AN UNDIVIDED 1/6% INTEREST IN AND TO THE COMMON AREA AS SHOWN AND DEFINED ON THE MAP, RESERVING THEREFROM THE FOLLOWING:

(A) EXCLUSIVE EASEMENTS, OTHER THAN PARCEL III, AS DESIGNATED ON THE MAP AND RESERVED BY GRANTOR TO UNITS FOR USE AS DESIGNATED IN THE DECLARATION; AND

(B) NONEXCLUSIVE EASEMENTS APPURTENANT TO ALL UNITS FOR INGRESS AND EGRESS, SUPPORT, REPAIR AND MAINTENANCE.

PARCEL III:

(A) THE EXCLUSIVE EASEMENT TO USE THE PARKING AREA(S) DESIGNATED P-5, ON THE HEREINABOVE MENTIONED "AMENDMENT TO CONDOMINIUM PLAN".

PARCEL IV:

A NONEXCLUSIVE EASEMENT APPURTENANT TO PARCEL I ABOVE FOR SUPPORT, REPAIR AND MAINTENANCE, AND FOR INGRESS AND EGRESS THROUGH THE COMMON AREA IN ACCORDANCE

Page 6

Non-Order Search    Requested By: Dino Araujo , Printed: 12/20/2017 11:58 AM
Doc: 2007-339958 TDD 02-21-2007

WITH CALIFORNIA CIVIL CODE SECTION 1351 (A).

**PARCEL V:**

ENCROACHMENT EASEMENTS APPURTENANT TO THE UNIT IN ACCORDANCE WITH THE PROVISIONS OF THE DECLARATION.

APN No: **LOT 053 BLOCK 0523**

Non-Order Search  Case: 18-30983   Doc# 19-3   Filed: 09/18/18   Entered: 09/18/18 14:09:24   Page 20 of 20
Doc: 2007-339958 TDD 02-21-2007                Page 19 of 19   Requested By: Dino Araujo , Printed: 12/20/2017 11:59 AM