Jonathan C. Cahill (SBN 287260)
jcahill@aldridgepite.com
Christopher M. McDermott (SBN 253411)
cmcdermott@aldridgepite.com
**ALDRIDGE PITE, LLP**
4375 Jutland Dr., Ste. 200
P.O. Box 19734
San Diego, CA 92177-9734
Telephone: (858) 750-7600
Facsimile: (619) 590-1385

*Attorneys for* Wilmington Savings Fund
Society, FSB, as trustee of Stanwich Mortgage
Loan Trust A; Deutsche Bank National Trust
Company, as trustee, on behalf of the holders
the WaMu Mortgage Pass-Through
Certificates, Series 2005-AR6

[Additional Counsel Listed on Continuation
Page]

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| In re | Case No. 18-30983-DM |
| KEYHAN MOHANNA, | Chapter 13 |
| Debtor(s). | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF JOINT MOTION TO CONVERT CHAPTER 13 CASE TO CHAPTER 7** |
| | **HEARING**:<br>Date: October 17, 2018<br>Time: 3:00 p.m.<br>Ctrm: 17<br>Judge: Hon. Dennis Montali |

Movants Wilmington Savings Fund Society, FSB, as trustee of Stanwich Mortgage Loan Trust A ("Wilmington"), Deutsche Bank National Trust Company, as trustee, on behalf of the holders the WaMu Mortgage Pass-Through Certificates, Series 2005-AR6 ("Deutsche"), Lenders Commercial Finance LLC ("LCF"), and Duke Partners II, LLC ("Duke") (collectively, "Movants") submit the following memorandum of points and authorities in support of their Joint Motion to Convert Chapter 13 Case to Chapter 7.

/./././

/./././

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................... - 1 -

II.  FACTUAL AND PROCEDURAL BACKGROUND ...................................... - 2 -

   A.  HISTORY OF THE PROPERTY- UNITS #1-6 .......................................... - 2 -

      I.   UNIT #1 .......................................................................................... - 2 -

      II.  UNIT #2 .......................................................................................... - 2 -

      III. UNIT #3 .......................................................................................... - 3 -

      IV. UNIT #4 .......................................................................................... - 3 -

      V.  UNIT #5 .......................................................................................... - 4 -

      VI. UNIT #6 .......................................................................................... - 4 -

   B.  FRAUDULENT TRANSFERS INITIATED BY DEBTOR ......................... - 5 -

   C.  FRIVOLOUS LITIGATION BY DEBTOR ............................................... - 7 -

   D.  LITIGATION BY FORMER TENANTS AGAINST DEBTOR ................... - 8 -

   E.  DEBTOR'S PRIOR CONVICTIONS ........................................................ - 8 -

   F.  THE BANKRUPTCY PROCEEDINGS ..................................................... - 10 -

   G.  THREATS BY DEBTOR AGAINST COUNSEL AND THE JUDICIARY ..... - 11 -

III. ARGUMENT ........................................................................................................ - 13 -

   A.  DEBTOR'S BANKRUPTCY CASE SHOULD BE CONVERTED PURSUANT TO 11 U.S.C. § 1307 ...................................................................... - 13 -

      1.  Legal Standard ........................................................................... - 13 -

      2.  Cause Exists to Convert this Case ........................................... - 14 -

   B.  CONVERSION IS IN THE BEST INTEREST OF CREDITORS ............... - 17 -

IV. CONCLUSION .................................................................................................... - 18 -

Case: 18-30983   Doc# 41   Filed: 10/12/18   Entered: 10/12/18 16:25:51   Page 2 of 21

# TABLE OF AUTHORITIES

**Cases**

*Camille Mixter et al. v. Mohanna et al.*, S.F. County Case No. CGC-18-568287 ....................- 8 -

*Deutsche Bank National Trust Company v. Mohanna et al.*......................................- 13 -

*In re Eclair Bakery*, Ltd., 255 B.R. 121 (Bankr. S.D.N.Y. 2000)...........................- 13 -

*Marrama v. Citizens Bank*, 549 U.S. 365, 372-74 (2007) ....................................- 14 -

*In re McNichols*, 254 B.R. 422 (Bankr. N.D. Ill. 2000)......................................- 13 -

*In re Owens*, 552 F.3d 958, 961 (9th Cir. 2009).............................................- 17 -

*Rollex Corp. v. Associated Materials, Inc.* .................................................- 17 -

*Simmons v Cosby (In re Simmons)*, 256 B.R. 578, 580 (Bankr. Md. 2001) ............................- 14 -

*In re Soderlund*, 236 B.R. 271, 273 (B.A.P. 9th Cir.1999) ....................................- 17 -

*In re Superior Siding & Window, Inc.*), 14 F.3d 240, 243 (4th Cir.1994) ..............................- 18 -

**Statutes**

11 U.S.C. § 109.....................................................................- 1 -, - 15 -, - 16 -, - 17 -

11 U.S.C. § 109(e) ........................................................................- 16 -, - 17 -

11 U.S.C. § 109(h)..........................................................................- 14 -

11 U.S.C. § 109(h)(1) .......................................................................- 15 -

11 U.S.C. § 1112(b)(1) ......................................................................- 13 -

11 U.S.C. § 1307(c)(1).......................................................................- 14 -

11 U.S.C. § 1326.......................................................................- 14 -, - 15 -

11 U.S.C. § 1328............................................................................- 14 -

11 U.S.C. § 506(a)..........................................................................- 17 -

**Other Authorities**

Penal Code Section 245(a)(4) ................................................................- 9 -

Penal Code Section 594(b)(1) ................................................................- 9 -

Penal Code Section 653(f)(d) ................................................................- 9 -

Vehicle Code Section 23103 .................................................................- 9 -

Vehicle Code Section 23152(b) ..............................................................- 9 -

# I. INTRODUCTION

The instant bankruptcy case is the latest in a litany of dilatory and bad faith acts by Keyhan Mohanna (the "Debtor") in a misguided and harmful effort to retain ownership and possession of six residential units located at 1405 Greenwich St., San Francisco CA 94109 (the "Property"). Debtor has filed three prior bankruptcy cases, two of which were dismissed, prosecuted frivolous and unmeritorious litigation against his creditors, and initiated fraudulent and unauthorized transfers in his scheme to retain control over the Property. Indeed, by the Debtor's own admission, the instant bankruptcy case was not filed for a legitimate reorganizational purpose. Instead, the case was employed as an improper litigation tactic to prevent a court-ordered deposition of the Debtor. When faced with a motion for relief from stay filed by Duke, Debtor made contradictory statements under penalty of perjury regarding ownership of the Property. Further, Debtor failed to obtain the requisite credit counseling, commence payments to the Chapter 13 Trustee, attend the Section 341(a) meeting of creditors, or file a confirmable Chapter 13 Plan of Reorganization. Importantly, Debtor is not even eligible to be a debtor under Chapter 13 of the Bankruptcy Code, as his debts exceed the unsecured debt limit imposed by 11 U.S.C. § 109. Simply put, Debtor is abusing the bankruptcy system and has no intention of discharging his duties and obligations as a fiduciary of the bankruptcy estate, and merely seeks to delay Movants' enforcement of their state law remedies. The totality of the circumstances evidences that the Debtor does not have the ability to reorganize under Chapter 13 and serve as the debtor-in-possession of his estate with its related fiduciary obligations. The foregoing factors, when combined with Debtor's numerous contradictory statements made under penalty of perjury, constitute "cause" to convert this case.

Conversion to Chapter 7 is in the best interests of creditors. First, a Chapter 7 Trustee would be able to secure, insure, and preserve the Property for the benefit of the estate. Second, the Trustee may avoid the fraudulent transfers clouding title to the Property, and ensure that improperly transferred units are brought back into the estate. Third, the Trustee may determine which units, if any, are occupied and producing rent, and collect and disburse rent collected from the Property. Fourth, following avoidance and recovery of improperly transferred units into the estate, the Trustee may stipulate to possession of the units by those entitled thereto, as appropriate. Finally, the Trustee

**MEMORANDUM OF POINTS AND AUTHORITIES**

Case: 18-30983    Doc# 41    Filed: 10/12/18    Entered: 10/12/18 16:25:51    Page 4 of 21

1    can evaluate the claims and causes of action Debtor may have, and prosecute or settle the same.

2    Based on the history of this Debtor and the purpose of the instant bankruptcy filing, "cause" exists to

3    convert this case. As Debtor's creditors would be worse off if this case were dismissed as the

4    Property appears to have equity that can benefit the Debtor's estate, this case should be converted to

5    one under Chapter 7.

6                    **II.       FACTUAL AND PROCEDURAL BACKGROUND**

7        **A. HISTORY OF THE PROPERTY- UNITS #1-6**

8            The Property is a residential condominium project consisting of six individual units. (*See*

9    Request for Judicial Notice ("RJN"), **Exhibit 1-A**). Debtor acquired title to the Property in August

10   of 2003. (RJN, **Exhibits 1-B**).

11           **i.     UNIT #1**

12           Wells Fargo Bank, N.A. ("Wells Fargo") was the beneficiary under a promissory note in the

13   original principal sum of $825,000 (the "Unit #1 Note") secured by a Deed of Trust on Unit #1 of the

14   Property. (*See* RJN, **Exhibit 1-C**). Due to the Debtor's default, Wells Fargo lawfully foreclosed upon

15   Unit #1 and took title as the successful bidder at the sale. (*See* RJN, **Exhibits 1-D**). On or about

16   March 9, 2018, Wells Fargo transferred title to Unit #1 to LCF. (*See* RJN, **Exhibits 1-E**). Since

17   2014, Unit # 1 has been the subject of at least five lawsuits, two of which are still pending in state

18   court. (*See generally,* RJN, **Exhibit 1**). On December 14, 2014, Debtor filed a frivolous Complaint

19   against Wells Fargo, which was dismissed on September 24, 2015. (*See* RJN, **Exhibits 1-F, 1-G**).

20   On April 1, 2015, Wells Fargo filed an Unlawful Detainer action and subsequently obtained a

21   Judgment of Possession. (*See* RJN, **Exhibits 1-H, 1-I**). Debtor sought to appeal this judgment,

22   which was dismissed as untimely. (*See* RJN, **Exhibit 1-J**). Debtor sought relief from this dismissal,

23   which was denied. (*See* RJN, **Exhibits 1-K**). Debtor appealed this denial, and said appeal is still

24   pending. (*See* RJN, **Exhibits 1-L, 1-N**). In the unlawful detainer action, Debtor has admitted that

25   he owns the Property. (*See* RJN, **Exhibits 1-O, 1-P**). A comprehensive summary of these acts

26   impacting Unit #1 is attached as **Exhibit 1**.

27           **ii.    UNIT #2**

28           On or about August 18, 2005, Debtor obtained a loan from Countrywide Bank in the original

principal sum of $704.000 which was evidenced by a promissory note secured by a Deed of Trust (the "Deed of Trust") secured by Unit #2 of the Property. (*See* RJN, **Exhibit 2-A**).

On August 4, 2016, a Proof of Claim related to the Unit #2 Loan was filed in the Third Bankruptcy Case, evidencing a total claim of $1,007,465.95 with $369,024.39 in pre-petition arrears. A comprehensive summary of acts impacting Unit #2 is attached as **Exhibit 2**.

### iii.    UNIT #3

Debtor executed a promissory note in the original principal sum of $612,500 (the "Unit #3 Note" secured by a Deed of Trust in favor of beneficiary Greenpoint Mortgage Funding, Inc. (*See* RJN, **Exhibit 3-A**). On April 21, 2014, HSBC Bank USA, N.A., as Trustee ("HSBC") recorded a Substitution of Trustee and Full Reconveyance of this Deed of Trust. (*See* RJN, **Exhibit 3-B**). On May 13, 2014, HSBC filed a Complaint against Debtor to cancel the full reconveyance, Superior Court of California, San Francisco County as Case No. CGC-14-539280. (*See* RJN, **Exhibit 3-C**). On January 12 2017, a judgment declaring the reconveyance void was entered in favor of HSBC, and said judgment was recorded the following day. (*See* RJN, **Exhibit 3-D**). The court denied Debtor's motion for relief from this judgment by order dated March 21, 2017, and Debtor filed a notice of appeal of this order on April 21, 2017. (*See* RJN, **Exhibit 3-E**). Debtor's appeal is currently pending in the First Appellate District, Case No. A151378, and the matter is still being briefed. (*See* RJN, **Exhibit 3-F**). A comprehensive summary of acts impacting Unit #3 is attached as **Exhibit 3**.

### iv.    UNIT #4

Debtor executed a promissory note in the original principal sum of $618,750 (the "Unit #5 Note" secured by a Deed of Trust on Unit #5 of the Property. (*See* RJN, **Exhibit 4-A**). The Note and Deed of Trust are collectively referred to as the "Unit #5 Loan." After Debtor defaulted on the Unit # 5 Note, Duke purchased Unit #5 at a duly noticed foreclosure sale.

On July 18, 2018, Duke filed its unlawful detainer action, and two motions to quash were denied and Debtor's demurrer to the complaint was overruled, Debtor answered the complaint on October 18, 2017.  (RJN, **Exhibit 4**, 3:18-21).  In order to frustrate this unlawful detainer, Debtor has engaged in frivolous litigation and dilatory relating to Unit #5. (*See generally*, RJN, **Exhibit 4**).

On July 3, 2018, Duke filed a motion for compel the deposition of Debtor.  The motion was

granted, setting the deposition for August 7, 2018. (RJN, **Exhibit 4-B**). Late on August 6, 2018, Duke's counsel received an email from Debtor stating he could not attend the deposition on August 7, 2018 because "my doctor has instructed me that under no circumstances whatsoever am I allowed to enter any legal venues." (RJN, **Exhibit 4-C**). Debtor did not attend the deposition. On August 28, 2018, the court issued an order granting terminating sanctions but allowing Debtor one last chance to attend the deposition scheduled for September 6, 2018. (RJN, **Exhibit 4-F**). On September 4, 2018, Debtor filed a Petition for Writ, claiming that, if the order was not stayed, he would filed bankruptcy on the afternoon of September 5, 2018. (RJN, **Exhibit 42**). Indeed, Debtor filed the Current Bankruptcy in the afternoon of September 5, 2018.

A comprehensive summary of these acts impacting Unit #4 is attached as **Exhibit 4**.

### v. Unit #5

Wilmington is the current beneficiary under a promissory note in the original principal sum of $960,000 (the "Unit #5 Note") secured by a Deed of Trust on Unit #5 of the Property. (*See* RJN, **Exhibit 5-A**). Carrington Mortgage Services ("Carrington") currently services the Loan on behalf of Wilmington. The Note and Deed of Trust are collectively referred to as the "Unit #5 Loan." The Unit #5 Loan is in severe default, and in order to delay foreclosure of Unit #5, Debtor has engaged in frivolous litigation and appeals relating to Unit #5. (RJN, **Exhibits 5-C – 5-D**). A comprehensive summary of these acts impacting Unit #5 is attached as **Exhibit 5**.

### vi. Unit #6

Deutsche is the beneficiary under a promissory note in the original principal sum of $650,000 (the "Unit #6 Note") secured by a Deed of Trust on Unit #6 of the Property. (*See* RJN, **Exhibit 6-A**). Select Portfolio Servicing Inc. ("SPS") currently services the Loan on behalf of Deutsche. The Note and Deed of Trust are collectively referred to as the "Unit #6 Loan." Due to the Debtor's default, Deutsche lawfully foreclosed upon Unit #6 and was the successful bidder at the sale. (*See* RJN, **Exhibits 6-B – 6-D**). Deutsche issued a Notice to Quit, and when the Debtor failed to vacate the premises, filed an Unlawful Detainer action and obtained a default Judgment. (*See* RJN, **Exhibits 6-E – 6-G**). Debtor's attempt to quash service and for a preliminary injunction failed, but the default judgment was vacated. (*See* RJN, **Exhibit 6-H**). After an unsuccessful demurrer, Debtor filed an

Answer to the Complaint on August 13, 2018, asserting that he has not been in possession of the Property since May of 2017. (*See* RJN, **Exhibit 6-I**). This directly contradicts positions the Debtor has subsequently taken. (*See* RJN, **Exhibit 6,** 3:14-19). Further, Debtor purported to transfer Unit #6 to a third party, despite having no ownership therein. (*See* RJN, **Exhibit 6-J**). A comprehensive summary of these acts impacting Unit #6 is attached as **Exhibit 6**.

## B. FRAUDULENT TRANSFERS INITIATED BY DEBTOR

Within weeks of the dismissal of the Third Bankruptcy Case (defined herein), Debtor and others began recording a series of mechanic's liens, deeds, and other documents as to the Property generally and Unit # 1 specifically. These deeds and instruments purported to transfer and encumber the Units by persons and entities that do not own them, they reference persons/entities that cannot be located and/or appear to have been made up, and the most recent deed purports to convey title to a recently formed LLC that is managed by the Debtor's daughter, Vivienne Mohanna.[1]

On November 25, 2014, a Deed of Trust was recorded against the Property in which Debtor purported to encumber all six Units as security for a $1,000,000 loan by KM Hospitality and Transportation Services, LLC. (*See* RJN, **Exhibit 7-A**). An LLC with a similar name (km instyle hospitality and transportation services, LLC) is registered with the California Secretary of State; its business address is the Property and its manager is Vivienne Mohanna. (RJN, **Exhibit 7-B**).

On March 24, 2017, a Mechanic's Lien Claim was recorded against all six units of the Property in the amount of $476.25. (*See* RJN, **Exhibit 7-C**). The lien claimant is identified as Chih-Hong Hsu. The work is described as "common area repairs and renovation work at 1405 Greenwich Street" at the request of "1405 Greenwich Street HOA." Debtor signed this document as the "agent for Chih-Hong Hsu." (*Id*.).

On April 19, 2017, a second Mechanic's Lien Claim was recorded against all six units of the Property in the amount of $476,543.25. (*See* RJN, **Exhibit 7-D**).

On May 11, 2017, an "Assignment/Transfer of Lien Claim" was recorded against the Property. (*See* RJN, **Exhibit 7-E**). This document is executed by the purported lien claimant, Chi-Hong Hsu, and purports to transfer his rights under the 4/19/2017 Mechanic's Lien Claim to "1275

**MEMORANDUM OF POINTS AND AUTHORITIES**

SHERKAT-EH-SHARGH-VA-GHARB, a general partnership on behalf of Alborz Fund Management III, a private holding entity." (*Id.*). Moving parties cannot locate any record of an escrow company called "McDonut and Kos Kesh Title and Escrow Services" and believe it is completely made up because "Donut" is the name of Debtor's dog (RJN, **Exhibit 7-F**) and "Kos Kesh" is a vulgar term in Farsi.

On May 23, 2017, a Deed in Lieu of Foreclosure was recorded against the Property. (*See* RJN, **Exhibit 7-G**). This Deed in Lieu of Foreclosure purports to transfer title to Units # 1-6 from "1405 Greenwich Street, HOA, A Trust," the purported Grantor, to "1275 SHERKAT-EH-SHARGH-VA-GHARB, a general partnership on behalf of Alborz Fund Management III, a private holding entity" the purported Grantee. (*Id.*). This Deed in Lieu of Foreclosure is signed by both Chih-Hong Hsu and Debtor. (*Id.*).

On June 2, 2017, a Deed of Trust was recorded against the Property as security for a second purported loan by KM Hospitality and Transportation Services, LLC, in the amount of $4,519,431.87; again this LLC maintains a business address at the Property and is managed by Vivienne Mohanna. (*See* RJN, **Exhibit 7-H**).

On June 26, 2017, the Debtor (who is not a licensed contractor) recorded a "Mechanic's Lien/Service Claim" in the amount of $488,888,888.88 against all six Units at the Property. (*See* RJN, **Exhibit 7-I**).

On July 31, 2017, A Grant Deed is recorded which purports to transfer title to Unit # 1 from "Alborz Fund" to "3H Renovation Services." (*See* RJN, **Exhibit 7-J**). This Grant Deed is signed by Chih-Hong Hsu, purportedly on behalf of Alborz Fund. (*Id.*). 3H Renovation Services, LLC was created in December 2017 and its manager is identified as "Henry Hang Hui." RJN, **Exhibit 7-K).** However, moving parties cannot find any evidence that "Henry Hang Hui" is an actual person and believe this person either does not exist, or his identify is being used to create an ostensible third-party "straw man" in the chain of title.

On November 1, 2017, a Memorandum of Lease with Option to Buy was recorded against the Property which purports to reflect a 20-year lease of all six units by Debtor as Trustee of the Keyhan

1 Given the voluminous and nefarious nature of the transfers of the Property initiated by the Debtor, a summary of
- 6 -    Case No. 18-30983-DM
**MEMORANDUM OF POINTS AND AUTHORITIES**

Case: 18-30983    Doc# 41    Filed: 10/12/18    Entered: 10/12/18 16:25:51    Page 9 of 21

Mohanna Revocable Trust dated July 8, 2003 (identified as "Lessor") to KMInSTYLE Hospitality and Transportation Services, LLC (identified as "Lessee"), and signed by Chih-Hong Hsu as the "managing member" of 3H Restoration Services. (*Id.*). (*See* RJN, **Exhibit 7-L**).

On April 17, 2018, a Deed of Trust was recorded against the Property in which 3H Renovation Services, LLC purported to encumber all six units as security for a $14,500,000 loan by "Alborz Trading Bank." (*See* RJN, **Exhibit 7-M**).

On June 15, 2018, a Grant Deed was recorded in which 3H Renovation Services, LLC purported to transfer title to Unit # 1 to "3H Renovation Services, LLC II." (*See* RJN, **Exhibit 7-N**).

On July 18, 2018, a Grant Deed is recorded in which "3H Renovation Services, LLC II" purported to transfer title to Unit # 1 to "OMG Solutions, LLC." (*See* RJN, **Exhibit 7-O**). Notably, Vivienne Mohanna is the manager of OMG Solutions, LLC (which was created in June 2018), which maintains a business address of 1405 Greenwich Street, Unit # 1. (*See* RJN, **Exhibit 7-P**). In other words, even though the Debtor (appearing through Vivienne Mohanna under a power of attorney) claims to own no right, title, or interest in the Property (Docket No. 24, ¶ 3-7), the Debtor and/or his daughter now claim ownership of Unit # 1 through an LLC that lists Unit # 1 as its business address.

Of note, Debtor's Statement of Financial Affairs in the Current Bankruptcy indicates that Debtor transferred the Property to 3H Renovation Services, LLC in exchange for a mechanic's lien. (*See* Docket No. 34, ¶ 18). This statement under penalty of perjury directly contradicts the series of transfers above. Indeed, this statement can only be squared with the transfers above if Debtor is admitting that "1405 Greenwich Street HOA" and "Alborz Fund" are merely alter egos of the Debtor.

## C. FRIVOLOUS LITIGATION BY DEBTOR

On March 1, 2016, Debtor filed two lawsuits against Wells Fargo in the Northern District of California, Case Nos. 4:16-cv-01035-HSG (related to Unit # 4) and 4:16-cv-01036-HSG (related to Unit # 1). (RJN, **Exhibits 8, 9**). The court denied Debtor's applications for temporary restraining orders to enjoin the trustee's sale as to Unit # 4, and to enjoin the unlawful detainer action as to Unit # 1. (RJN, **Exhibit 9**, Docket No. 22). Debtor's First Amended Complaint included ten causes of

these transfers and the suspect circumstances surrounding the same are attached hereto as **Exhibit 7**.

**MEMORANDUM OF POINTS AND AUTHORITIES**

action for, among other things, wrongful foreclosure, cancellation of his note and deed of trust, and violation of various state and federal laws (TILA, RESPA, California's Homeowner's Bill of Rights, etc.). (RJN, **Exhibits 8, 9**). When Wells Fargo filed motions to dismiss the First Amended Complaint, Debtor filed voluntary dismissals of both cases on December 12, 2016. (RJN, **Exhibits 8, 9**).

On December 6, 2017, Debtor filed a Verified Complaint in the Superior Court of California, County of San Francisco (Case No. CGC-17-562907) against Wells Fargo and others that included thirteen causes of action for, among other things, negligence, IIED, fraud, trespass, assault, battery, elder abuse, wrongful foreclosure, quiet title, and wrongful eviction. (RJN, **Exhibits 10, 11**). This lawsuit related to Unit # 1 and Unit # 4 and alleged that Debtor – not 3H Restoration Services – was the true and rightful owner of both; apparently for color, Debtor also alleged that Wells Fargo's agents assaulted him and impersonated law enforcement, and that Debtor "has been living in fear for the safety of his family . . . ." (RJN, **Exhibit 11** at ¶ 20). The court sustained Wells Fargo's demurrer, in part based on the *res judicata* effect of the Judgment entered in its favor on September 24, 2015, in Superior Court of California, County of San Francisco, Case No. CGC-14-543229. (RJN, **Exhibit 12**). Debtor's First Amended Complaint dropped his claim to title as to Unit # 1, but Debtor still alleges he is the rightful owner of Unit # 4. (RJN, **Exhibit 13**).

### D. LITIGATION BY FORMER TENANTS AGAINST DEBTOR

On July 23, 2018, former tenants of Unit # 4 filed *Camille Mixter et al. v. Mohanna et al.*, S.F. County Case No. CGC-18-568287, which brings claims for violation of rent ordinances, fraud, breach of contract, construction eviction, and others against Debtor, Debtor's daughter, Vivienne Mohanna, and others. (RJN, **Exhibit 14**). Among other things, the plaintiffs allege they paid Debtor approximately $3,600 per month from March 2013 through August 2017, and that Debtor, who lived in the unit above them (Unit # 6), yelled at them, screamed at them, harassed them, accused them of conspiring with Debtor's lenders, and demanded amounts they did not owe. (RJN, **Exhibit 14** at ¶¶ 7, 10).

### E. DEBTOR'S PRIOR CONVICTIONS

On or about July 26, 2005, Debtor was convicted of a misdemeanor in the Superior Court of

California, County of San Francisco, Case No. 02211005 of violating Vehicle Code Section 23103 (reckless driving). (*See* RJN, **Exhibit 15**).

On or about July 17, 2007, Debtor was convicted of misdemeanors in the Superior Court of California, County of San Francisco, Case No. 2305431 of violating Vehicle Code Section 23152(b) (driving under the influence with a blood alcohol content of 0.08% or higher) and Penal Code Section 653(f)(d) (soliciting another to transport, import into the state, sell, furnish, administer, or give away a controlled substance). (*See* RJN, **Exhibit 16**).

On or about August 11, 2016, Debtor was convicted of a felony in the Superior Court of California, County of San Mateo, Case No. NF4386161 for violating Penal Code Section 594(b)(1) (willfully, unlawfully and maliciously deface, damage, or destroy the property of another). (*See* RJN, **Exhibit 17**).

On or about April 14, 2016, Debtor was convicted of a felony in the Superior Court of California, County of San Francisco, Case No. 15023140 for violating Penal Code Section 245(a)(4) (willfully, unlawfully and personally commit an assault upon another by a means of force likely to produce great bodily injury). (*See* RJN, **Exhibit 18**).

On or about August 12, 2015, a Request for Civil Harassment Restraining Order was filed against Debtor in the Superior Court of California, County of San Mateo, Case No. CV535050. (*See* RJN, **Exhibit 19**). The Declarations of Craig Whipple Sr. and Najeen Sorrentino filed in support thereof paint a harrowing picture. (*See, id*.). When a real estate company was hired by Wells Fargo to re-key and market Unit #1 of the Property after it had been foreclosed upon, Debtor assaulted a locksmith and made various threats against the employees of the company. (*See, id*.) Debtor then vandalized the office of the company and left a blood-stained note threatening Mr. Whipple. (*See, id*.). It was also discovered that the Debtor had broken back into Unit #1 and was improperly leasing it to tenants without the knowledge of Wells Fargo. (*See, id*.). On October 6, 2015, a Civil Harassment Restraining Order was entered. (*See* RJN, **Exhibit 19a**). On November 20, 2015, an Order re Motion for Attorneys' Fes and Costs Pursuant to Code of Civil Procedure Section 527.6(R) was entered, granting Mr. Whipple attorneys fees and costs, as he was successful in obtaining a civil restraining order against the Debtor. (*See* RJN, **Exhibit 20**).

**MEMORANDUM OF POINTS AND AUTHORITIES**

1   Due to the numerous felonies and misdemeanors outlined above, the Bureau of Real Estate

2   for the State of California revoked Debtor's real estate license effective December 19, 2017.  (*See*

3   RJN, **Exhibit 21**).

4   Based on statements made to this Court, Moving Parties believe, but have been unable to

5   confirm, that Debtor's felony conviction for assault in San Francisco County also relates in some

6   manner to the Property. (*See* RJN, **Exhibit 24**, Docket No. 25 (Debtor references "a chaotic event

7   between Debtor's tenants resulting in Debtor's incarceration, where he was unable to afford bail and

8   was stuck until the system took its course for 5 insufferable months.")).

9   **F.   THE BANKRUPTCY PROCEEDINGS**

10  On March 1, 2010, Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy

11  Code and was assigned bankruptcy case no. 10-30701-HLB (the "First Bankruptcy Case").  On

12  March 16, 2010, the Debtor filed his Bankruptcy Schedule A, disclosing ownership of the Property

13  and valuing the Property at $5,000,000.  (Docket No. 7).  On April 3, 2012, the First Bankruptcy

14  Case was converted to one under Chapter 7 of the Bankruptcy Code.  On February 19, 2013, the

15  Debtor received a discharge.  On April 24, 2015, the First Bankruptcy Case was closed.  (*See* RJN,

16  **Exhibit 22**).

17  On November 16, 2015, Debtor filed a voluntary petition under Chapter 13 of the Bankruptcy

18  Code and was assigned bankruptcy case no. 15-31425-DM (the "Second Bankruptcy Case").  Debtor

19  sought and obtained three extensions to file required schedules and documents in the Second

20  Bankruptcy Case.  Despite these extensions, he failed to file any of the required documents.  On

21  April 28, 2016, the Second Bankruptcy Case was dismissed for failure to file information.  (*See* RJN,

22  **Exhibit 23**).

23  On April 11, 2016, Debtor filed a voluntary petition under Chapter 13 of the Bankruptcy

24  Code and was assigned bankruptcy case no. 16-30388-HLB (the "Third Bankruptcy Case"). (RJN,

25  **Exhibit 24**).  On August 29, 2016, the Third Bankruptcy Case was converted to one under Chapter

26  11 of the Bankruptcy Code.  (*Id.*)  When Wells Fargo moved for relief from stay, Debtor opposed the

27  same by, among other things, arguing that Wells Fargo's foreclosure was void. ". (RJN, **Exhibit 24**,

28  Docket Nos. 21, 25).  Debtor further testified that he has lived in Unit # 6 since 1987 and that he

owns Units # 2 through 6 and is seeking to recover Unit # 1 from Wells Fargo. "). (RJN, **Exhibit 24**, Docket No. 25).

On September 8, 2016, Debtor filed an unsuccessful motion to re-impose the stay because the activities of the foreclosing lenders were "significantly hindering the Debtor's ability to reorganize and sell the Property." (RJN, **Exhibit 24**, Docket No. 61). In support, Debtor testified that (1) all his loans were fraudulent and void; (2) 1405 Greenwich could not be sold as individual units; (3) he had an offer from KM InStyle Hospitality/Transportation (his LLC) to purchase the property for $5,000,500; (4) he wants the court to determine the validity of the purported secured claims; and (5) a sale of the property will generate sufficient funds to pay all claims. (Docket No. 61-1). On October 17, 2016, the Debtor filed an Amended Schedule A, disclosing ownership of the Property and again valuing the Property at $5,000,000. (RJN, **Exhibit 24,** Docket No. 77). On January 5, 2017, Debtor filed a Monthly Operating Report in which he represented $8,378 in net rental income. (RJN, **Exhibit 24,** Docket No. 100). On March 9, 2017, the Debtor was dismissed. (*See* RJN, **Exhibit 24**). On June 13, 2017, the Third Bankruptcy Case was terminated. (*Id.*)

On September 5, 2018, Debtor initiated the instant case by filing a skeletal petition under Chapter 13 of the Bankruptcy Code and was assigned bankruptcy case no. 18-30983 (the "Fourth Bankruptcy Case" or "Current Bankruptcy"). Debtor failed to obtain credit counseling prior to filing the Current Bankruptcy, and sought a waiver of this requirement. (*See* Docket No. 5). The Court denied this request. (*See* Docket No. 14).

Debtor's Bankruptcy Schedules clearly indicate that he is not eligible to be a debtor under Chapter 13 of the Bankruptcy Code, because his unsecured debts are excessive. (*See* Docket No. 34). Debtor does not schedule any interest in the Property, and claims only to have unsecured debt. (*See id.*). While it is clear from the above that the Property is truly part of the bankruptcy estate, Debtor has no other debt subject to reorganization within the chapter 13 context. Further, Debtor failed to attend the Section 341(a) meeting of creditors on October 11, 2018.

For the reasons set forth more fully below, the Debtor's case must be converted to one under Chapter 7.

**G. Threats by Debtor Against Counsel and the Judiciary**

On April 1, 2018, counsel for Deutsche in its unlawful detainer proceeding received threatening email correspondence from Debtor riddled with profanity. (*See* Declaration of William R. Jarrell in Support of Joint Motion to Convert Chapter 13 Case to One Under Chapter 7 ("Jarrell Decl.") ¶ 4, **Exhibit 25**). The attachment to the April 1, 2018, email also contained language aimed at John Aldridge, managing partner of Aldridge Pite, LLP. (*See* Jarrell Decl. ¶ 5, **Exhibit 26**). The same day, Debtor emailed another attachment, threatening Mr. Aldridge's bar license along with a threat to "hang you by your balls." (*See* Jarrell Decl. ¶ 6, **Exhibit 27**). In response to these threats, Aldridge Pite, LLP issued an internal security alert identifying Debtor as a potential threat to the physical safety of the firm's employees and agents. (*See* Jarrell Decl. ¶ 7, **Exhibit 28**).

On April 9, 2018, Debtor sent another threatening email to Mr. Jarrell containing profanity. (*See* Jarrell Decl. ¶ 8, **Exhibit 29**). On April 10, 2018, Mr. Jarrell instructed Debtor's counsel in the unlawful detainer proceeding to "instruct Mr. Mohanna to cease sending me threatening communications." (Jarrell Decl. ¶ 9, **Exhibit 30**). This did not stop the communications from the Debtor, or his daughter Vivien Mohanna. (*See* Jarrell Decl. ¶ 10).

On May 14, 2018, Mr. Jarrell received another threatening, expletive-riddled fax from the Debtor. (Jarrell Decl. ¶ 12, **Exhibit 31**). The same day, Debtor sent a fax, stating that his counsel in the unlawful detainer proceeding would "bust your [expletive] balls, you slimeball [expletive]" and that "you are [expletive]ing with the wrong family." (Jarrell Decl. ¶¶ 13, 14, **Exhibit 32**). On May 14, 2018, another request was made to Debtor's counsel to halt these communications. (*See* Jarrell Decl. ¶ 15, **Exhibit 33**). On May 20, 2018, Mr. Jarrell again received an email from Debtor with threatening and inappropriate language. (*See* Jarrell Decl. ¶ 16, **Exhibit 25**). Since May 20, 2018, Mr. Jarrell has received at least six further communications from Debtor. (Jarrell Decl. ¶¶ 17-22, **Exhibits 35-39**). These communications are riddled with threats against counsel, with one attaching a full size black and white photo appearing to depict the cast from the film "The Godfather." (Jarrell Decl. ¶ 20, **Exhibit 37**). In one such communication, Debtor appears to threaten Hon. Judge Ronald E. Quidachy of the San Francisco Superior Court. (*See* Jarrell Decl. ¶ 19, **Exhibit 36**).

In *Deutsche Bank National Trust Company v. Mohanna et al.*, pending in the Superior Court of California, County of San Francisco as Case No. CGC-17-561718., counsel for Deutsche filed a

**MEMORANDUM OF POINTS AND AUTHORITIES**

Response to the Court's Order to Show Cause Hearing for Failure to File Proof of Service on Defendants and Obtain Answers, or Enter Defaults. (*See* RJN, **Exhibit 40**). This Response included a collection of profane and threatening communications sent by Debtor to various attorneys involved in his many lawsuits. (*Id.*).

For the reasons set forth more fully below, the Debtor's case should be converted to one under Chapter 7.

## III.    ARGUMENT

### A.    DEBTOR'S BANKRUPTCY CASE SHOULD BE CONVERTED    PURSUANT TO 11 U.S.C. § 1307

#### 1.    Legal Standard

Section 1307 of the Bankruptcy Code provides, in pertinent part:

> ... on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause, ***including*--**

11 U.S.C. § 1307(c) (emphasis added). While Section 1307(c) provides a list of examples constituting cause sufficient to warrant conversion, this list is not exhaustive. *In re McNichols*, 254 B.R. 422 (Bankr. N.D. Ill. 2000); *In re Eclair Bakery*, Ltd., 255 B.R. 121 (Bankr. S.D.N.Y. 2000). The Supreme Court has acknowledged that, while Section 1307 does not explicitly list specific pre-petition acts that constitute "cause" for conversion, courts routinely treat dismissal or conversion for pre-petition bad faith acts as authorized by the Bankruptcy Code. *See Marrama v. Citizens Bank*, 549 U.S. 365, 372-74 (2007) (noting that, "[i]n practical effect, a ruling that an individual's Chapter 13 case should be dismissed or converted to Chapter 7 because of prepetition bad-faith conduct… is tantamount to a ruling that the individual does not qualify as a debtor under Chapter 13. That individual, in other words, is not a member of the class of '"honest but unfortunate debtor[s]"' that the bankruptcy laws were enacted to protect.") (citations omitted). Further, the fact that a debtor is *pro se* does not excuse him from fulfilling the duties and responsibilities imposed by the Bankruptcy Code. *Simmons v Cosby (In re Simmons)*, 256 B.R. 578, 580 (Bankr. Md. 2001), *affd*, 8 Fed. App'x 228, 229 (4th Cir. 2001). For the reasons discussed more fully below, sufficient cause exists to

convert this case.

## 2. Cause Exists to Convert this Case

Subsection (c) of section 1307 sets forth a non-exclusive list of examples of cause including, among other things, "unreasonable delay by the debtor that is prejudicial to creditors" and "failure to commence making timely payments under section 1326." 11 U.S.C. § 1307(c)(1), (4). In the Current Bankruptcy, Debtor has: (1) failed to commence payments to the Chapter 13 Trustee in violation of section 1328 and this Court's order of September 6, 2018; (2) failed to complete a credit counseling course mandated by section 109(h); (3) failed to attend the 341(a) meeting of creditors on October 11, 2018; (4) failed to file a confirmable Chapter 13 Plan of Reorganization; (5) failed to file required bankruptcy schedules and documents in violation of section 521 and the Court's order of October 4, 2018; and (6) filed information under penalty of perjury that directly contradicts prior statements made under oath. As a result, a review of the docket reflects ample cause to convert the Current Bankruptcy to Chapter 7. Further, a court may look to the pre-petition bad faith actions by the debtor when determining if "cause" exists for conversion. *Marrama*, 549 U.S. at 372-74. As discussed above, Debtor has engaged in a campaign of frivolous litigation and appeals, dilatory tactics, unauthorized and fraudulent transfers of interests in the Property, and criminal and threatening activity. Simply put, the Debtor is not an innocent or deserving debtor seeking to reorganize his debts. He is not an unfortunate debtor seeking refuge beneath the shield of the Bankruptcy Code, but instead is an abusive and litigious actor who seeks to use it as a sword against his creditors. As explained more fully below, it is clear that cause exists to convert the Debtor's case.

### a. Debtor's Actions in the Current Bankruptcy

During the brief life of the Current Bankruptcy, Debtor has failed to discharge his duties under the Bankruptcy Code or evidence a reorganizational effort. On September 6, 2018, the Court entered its Order Re: Chapter 13 Plan Payments and Adequate Protection Payments. (Docket No. 8). This order requires the Debtor to commence payments to the Chapter 13 Trustee beginning the 20th day of the month following the petition date. (*Id.*). Here, the Debtor has failed to abide by this order and commence payments pursuant to 11 U.S.C. § 1326. Indeed, the Debtor has not made any

1  payments to the Trustee. Further, the Debtor failed to appear at the 341(a) meeting of creditors held

2  on October 11, 2018. While the Debtor filed a proposed Chapter 13 Plan of Reorganization, it is

3  woefully inadequate and evidences the Debtor's inability to fund a plan or reorganize his debts. (*See*

4  Docket No. 36) This proposed plan is on an improper form, states the Debtor has no property,

5  provides no cure of arrears or reorganization of debt, and only commits $200 per month over an

6  undefined plan term. (*See* Docket No. 36). Finally, the Debtor failed to obtain the required pre-

7  petition credit counseling mandated by 11 U.S.C. § 109(h)(1), and the "exigent" circumstances cited

8  by the Debtor as a excuse for this failure were rejected by the Court. (Docket No. 8). Based on these

9  numerous failures and deficiencies, the Court should convert the Current Bankruptcy to Chapter 7.

10                    **b.    *The Current Bankruptcy was filed for an Improper Purpose***

11              By the Debtor's own admission, the Current Bankruptcy was not filed for a reorganizational

12  purpose. On August 23, 2018, the Superior Court of California entered an Order re: 1. Plaintiff's

13  Motion for Terminating Sanctions [and] 2. Defendant's Motion for Discovery Protective Order (the

14  "Sanctions Order"). (RJN, **Exhibit 41**). This Sanctions Order stayed the requested sanctions to

15  allow Debtor one last chance to attend a deposition scheduled for September 6, 2018. In response,

16  the Debtor filed a Petition for Writ stating that, if the Sanctions Order was not stayed by September

17  5, 2018, Debtor "[w]ill be forced to file bankruptcy that afternoon." (RJN, **Exhibit 42**). True to his

18  word, the Debtor filed the Current Bankruptcy on September 5, 2018 at 3:30 p.m. By his own

19  admission, Debtors intent is not to reorganize his debts, but to utilize the Bankruptcy Code as a tool

20  to facilitate his bad faith litigation tactics. Based on the foregoing, the Court should convert the

21  Debtor's bankruptcy case to Chapter 7.

22                    **c.    *Debtor's Pre-Petition Bad Faith Acts***

23              As discussed in detail above, the Debtor has fought tooth and nail to retain ownership and

24  possession of the Property, resorting to frivolous litigation and appeals, delay tactics, and threats

25  against counsel and violence against innocent people. Debtor has clouded title to the Property via a

26  series of unauthorized and fraudulent 'transfers' to fictitious entities and persons in an effort to

27  thwart Movants' efforts to lawfully exercise their state law remedies. When these actions are

28  examined together, a clear pattern emerges—namely that the Debtor is an abusive and vexatious

litigant who has no qualms in abusing the legal system to his benefit. The Current Bankruptcy is no different.

Based on the pre-petition bad faith acts by the Debtor, it is clear that the Current Bankruptcy was filed in bad faith, and the Court should convert the Debtor's bankruptcy case to Chapter 7.

### d. Debtor is Ineligible for Relief under Chapter 13 of the Bankruptcy Code

Bankruptcy Code section 109(e) provides that "[o]nly an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $360,475.00 and noncontingent, liquidated, secured debts of less that $1,081,400…may be a debtor under chapter 13 of this title." 11 U.S.C. § 109(e). Section 506(a) states that [a]n allowed claim of a creditor secured by a lien…is a secured claim to the extent of the value of such creditor's interest…and is an *unsecured* claim to the extent that the value of such creditor's interest…is less than the amount of such allowed claim." 11 U.S.C. § 506(a) (emphasis added). For the purposes of determining Chapter 13 eligibility under Section 109(e), the 9th Circuit treats undersecured claims as unsecured debt. *In re Soderlund*, 236 B.R. 271, 273 (B.A.P. 9th Cir.1999).

Here, the Debtor is not eligible under 11 U.S.C. § 109(e) to be a Chapter 13 debtor because the total amount of Debtor's unsecured debts exceed the statutory limit. Debtor disclosed in his Third Bankruptcy that he owed the Internal Revenue Service $628,776.39 and the Franchise Tax Board $329,897.58 in unsecured debt. (*See* RJN, **Exhibit 24,** Docket No. 78). This total of $958,673.97 in unsecured debt owed to taxing authorizes alone surpasses the unsecured debt limit imposed by section 109(e). Further, Debtor appears to acknowledge he still owes these taxes, as his voluntary petition in the Current Bankruptcy discloses the type of debts he owes as, "TAX debt to IRS & FTB resulting from cancelled/forgiven debts." (Docket No. 1, Part 16(c)). Indeed, Debtor confirms that he owes the Internal Revenue Service and Franchise Tax Board approximately $500,000 each. (Docket No. 3). Finally, Debtor's Schedule F indicates the Debtor has approximately $1,125,495.07 in unsecured debt. (*See* Docket No. 34).

As a result of the foregoing, the Debtor is not eligible to be a debtor under Chapter 13 of the Bankruptcy Code, which supports conversion of the Current Bankruptcy.

/././

## B. CONVERSION IS IN THE BEST INTEREST OF CREDITORS

When deciding between dismissal and conversion of a bankruptcy case, "the court must consider the interests of *all* of the creditors." *In re Owens*, 552 F.3d 958, 961 (9th Cir. 2009) (emphasis added) (citing *Rollex Corp. v. Associated Materials, Inc.* (*In re Superior Siding & Window, Inc.*), 14 F.3d 240, 243 (4th Cir.1994)).

As an initial matter, there appears sufficient equity in the Property to pay secured creditors and provide a dividend to unsecured creditors. According to Debtor's bankruptcy schedules in the First and Third Bankruptcy Cases, the Property has a fair market value of approximately $5,000,000. (*See* RJN, **Exhibit 24,** Docket Nos. 77, 78). Debtor recently valued each of the six units at $1.25 million under penalty of perjury. (*See* RJN, **Exhibit 43**, ¶ 10). When comparing this valuation to the proofs of claim filed relating to Unit #2 and Unit #5 in the Third Bankruptcy, it is clear that there is substantial equity in the Property. Specifically, based upon the claim amount of $1,007,466.95 asserted by creditor for Unit #2 in the Third Bankruptcy, the unit appears to have an equity cushion of approximately $242,533.05. (RJN, **Exhibit 2-A**) Similarly, Unit #5 appears to enjoy an equity cushion of approximately $211,750.09 above its $1,038,249.91 claim asserted in the Third Bankruptcy. (RJN, **Exhibit 24**, Claim No. 9). Debtor's Schedule F indicates the Debtor has approximately $1,125,495.07 in unsecured claims. (*See* Docket No. 34). As a result, it appears the Property can be sold to pay off all liens encumbering the Property in addition to providing a substantial dividend to the Debtor's unsecured creditors. Based on the foregoing, conversion of case to Chapter 7 is in the best interests of creditors and the estate.

Further, conversion of the Current Bankruptcy to Chapter 7 would bring this tortured saga regarding the Property to and end while providing for an orderly and transparent administration of the estate. This would greatly benefit Debtor's creditors and guard against any further diminution of the estate. First, a Chapter 7 Trustee would be able to secure, insure, and preserve the Property for the benefit of the estate. Second, the Trustee may avoid the fraudulent transfers clouding title to the Property, and ensure that improperly transferred units are brought back into the estate. Third, the Trustee may determine which units, if any, are occupied and producing rent, and collect and disburse rent collected from the Property. Fourth, following avoidance and recovery of improperly transferred

units into the estate, the Trustee may stipulate to possession of the units by those entitled thereto, as appropriate. Finally, the Trustee can evaluate the claims and causes of action Debtor may have and prosecute or settle the same. As Debtor's creditors would be worse off if this case were dismissed as the Property appears to have equity that can benefit the Debtor's estate, this case should be converted to one under Chapter 7 of the Bankruptcy Code.

## IV. CONCLUSION

For the reasons set forth herein, this case should be converted to one under Chapter 7 of the Bankruptcy Code.

**WHEREFORE**, Movants respectfully requests:

1.      That the Court grant Movants' Motion and convert this case;

2.      For such other and further relief as this Court deems just and proper.

Respectfully submitted,

**ALDRIDGE PITE, LLP**

Dated: October 12, 2018                    /s/ *Jonathan C. Cahill*

Jonathan C. Cahill
Attorneys for Wilmington Savings Fund Society, FSB, as trustee of Stanwich Mortgage Loan Trust A; Deutsche Bank National Trust Company, as trustee, on behalf of the holders the WaMu Mortgage Pass-Through Certificates, Series 2005-AR6

- 18 -                                        CASE NO. 18-30983-DM

**MEMORANDUM OF POINTS AND AUTHORITIES**